LATHAM & WATKINS LLP
  Mark Broude (MB 1902)
885 Third Avenue
New York, New York  10022-4802
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864

LATHAM & WATKINS LLP
  Marc W. Rappel (California Bar #97032)
  Jonathan S. Shenson (California Bar #184250)
633 West Fifth Street, Suite 4000
Los Angeles, California 90071-2007
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763

Attorneys for Defendants John Danhakl and Jonathan Sokoloff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>TL ADMINISTRATION CORPORATION., et al. (f/ka/ TWINLAB CORPORATION, et al.)<br><br>    Debtors. | Chapter 11<br><br>Case No. 03-15564 (CB)<br>Jointly Administered<br><br>Adv. Case No. 04-2334 (CB) |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TL ADMINISTRATION (f/k/a TWINLAB CORPORATION) on behalf of the ESTATE OF TL ADMINISTRATION CORPORATION,<br><br>    Plaintiff,<br><br>     v.<br><br>BRIAN BLECHMAN, et al.<br><br>    Defendants. | **MEMORANDUM IN SUPPORT OF THE MOTION OF DANHAKL AND SOKOLOFF TO WITHDRAW THE REFERENCE WITH RESPECT TO THE ADVERSARY PROCEEDING COMMENCED BY THE COMMITTEE OF UNSECURED CREDITORS** |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF FACTS ......................................................................................2

III.  THERE IS COMPELLING "CAUSE" FOR THIS COURT TO WITHDRAW
THE REFERENCE..................................................................................................6

      A.     The Claims Against the Former Directors are "Non-Core"....................................7

      B.     The Former Directors have a Constitutional Right to a Jury Trial
on the Non-Core Claims. ....................................................................................10

            1.     The Claims against the Former Directors are Predicated upon
Tortious Conduct Actionable in Suits at Law............................................11

            2.     The Committee seeks only Money Damages against the Former
Directors, Entitling the Former Directors to a Jury Trial...........................13

      C.     Withdrawal of the Reference Will Enhance Judicial Economy,
Preserve the Resources of the Parties and Avoid Duplicative
Litigation.............................................................................................................14

IV.  CONCLUSION.....................................................................................................17

.

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*Billing v. Ravin, Greenberg & Zackin,*
  22 F.3d 1242 (3d. Cir. 1994) ................................................................................ 12

*Cinerama, Inc. v. Technicolor Inc. ("Technicolor III"),*
  663 A.2d 1134 (Del. Ch. 1994), *aff'd on other grounds,*
  663 A.2d 1156 (Del. 1995) ................................................................................... 12

*Curtis v. Loether,*
  415 U.S. 189 (1974) .............................................................................................. 14

*Dairy Queen, Inc. v. Wood,*
  369 U.S. 469, 82 S. Ct. 894 (1962) ................................................................. 11, 14

*DePinto v. Provident Sec. Life Insur. Co.,*
  323 F.2d 826 (9th Cir. 1963) ................................................................................ 11

*Exide Technologies, Inc.,*
  299 B.R. 732 (Bankr. D. 2003) .............................................................................. 9

*Granfinanciera, S.A. v. Nordberg,*
  492 U.S. 33, 109 S.Ct. 2782 (1989) .................................................. 10, 11, 12, 13

*Hallady v. Verschoor,*
  381 F.2d 100 (8th Cir. 1967) ................................................................................ 11

*Halper v. Halper,*
  164 F.3d 830 (3d Cir. 1999) ................................................................................... 7

*In re 610 W. 142 Owners Corp.,*
  219 B.R. 363 (Bankr. S.D.N.Y. 1998) ................................................................... 9

*In re Ben Franklin Retail Stores, Inc.,*
  2000 W L 28266 (N.D. Ill. Jan. 12, 2000) ............................................................ 13

*In re Durso Supermarkets, Inc.,*
  170 B.R. 211 (S.D.N.Y. 1994) ........................................................................... 6, 9

*In re Evangelist,*
  760 F.2d 27 (1st Cir. 1985) .................................................................................. 11

*In re J.T. Moran Fin. Corp.,*
  124 B.R. 931 (S.D.N.Y. 1991) ............................................................................... 8

**Page(s)**

*In re Lombard Wall, Inc.*,
48 B.R. 986 (S.D.N.Y. 1985) ............................................................... 9

*In re Michigan Real Estate Ins. Trust*,
87 B.R. 447 (E.D. Mich. 1988) ............................................................ 9

*In re NDEP Corp.*,
203 B.R. 905 (D. Del. 1996) ............................................................... 8

*In re Orion Pictures Corp*,
4 F.3d 1095 (2d Cir. 1993) ......................................................... passim

*In re Prof'l Ins. Mgmt.*,
No. Civ. 98-3617, 2000 WL 679247 (D. N.J. May 25, 2000).................... 8

*In re RSL Com Primecall, Inc)*,
2003 WL 22989669 (Bankr. S.D.N.Y., Dec. 11, 2003) ......................... 13

*Matter of Delaware & Hudson Ry. Co.*,
122 B.R. 887 (D. Del. 1991) ............................................................... 9

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
458 U.S. 50, 102 S.Ct. 2858 (1982) ..................................................... 9

*Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.*,
267 F.3d 340 (3rd Cir. 2001) ......................................................... 9, 13

*Page Mill Asset Management v. Credit Suisse First Boston*,
2001 WL 863552 (S.D.N.Y. 2001) .................................................... 11

*Parsons v. Bedford*,
28 U.S. 433, 7 L.Ed. 732 (1830) ....................................................... 10

*Periera v. Cogan*,
2002 WL 989460 (S.D.N.Y. 2002) .................................................... 14

*Reich v. Continental Casualty Co.*,
33 F.3d 754 (7th Cir. 1994) .............................................................. 14

Roselink Investors, LLC v. Shenkman,
2004 WL875262 (S.D.N.Y. May 19, 2004) ......................................... 12

*Ross v. Bernhard*,
396 U.S. 531 (1970) ........................................................................ 10

*US West, Inc. v. Time Warner Inc.*,
1996 WL 307445 (Del. Ch. 1996)...................................................... 12

**Page(s)**

*Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, LLP,*
  201 B.R. 635 (S.D.N.Y. 1996) ................................................................................... 8

**STATUTES**

28 U.S.C. § 1334(b) ............................................................................................................. 5

28 U.S.C. § 157 ................................................................................................................... 8

28 U.S.C. § 157(a) .............................................................................................................. 6

28 U.S.C. § 157(b)(1) ......................................................................................................... 7

28 U.S.C. § 157(c)(1) ..................................................................................................... 7, 16

28 U.S.C. § 157(d) .............................................................................................................. 6

Fed. R. Bankr. P. 5011 ....................................................................................................... 6

LA\1248048.12

**MEMORANDUM IN SUPPORT OF THE MOTION
OF DANHAKL AND SOKOLOFF WITHDRAW THE REFERENCE WITH RESPECT
TO THE ADVERSARY PROCEEDING COMMENCED BY THE COMMITTEE OF
<u>UNSECURED CREDITORS</u>**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

      Defendants John Danhakl and Jonathan Sokoloff (the "Former Directors"), former directors of TL Administration Corporation, f/k/a TwinLab Corporation ("TLC"), respectfully submit this memorandum in support of their motion to withdraw the reference with respect to the above-captioned adversary proceeding (the "Adversary Action") filed on behalf of TLC, TL Administration, Inc. and TL Administration UK, Ltd (collectively, the "Debtors" or the "Company") by the Committee of Unsecured Creditors (the "Committee") and U.S. Bank National Association, as Indenture Trustee (the "Indenture Trustee" and together with the Committee, "Plaintiffs").

### I.    <u>INTRODUCTION</u>

      Among the twenty claims for relief in the Adversary Action, Plaintiffs assert two claims against the Former Directors, which they acknowledge are "non-core."  The fifth claim for relief alleges breach of fiduciary duty, while the fifteenth claim for relief is styled as "deepening insolvency;" both claims seek only money damages from the Former Directors.  On May 7, 2004, in response to the Former Directors' motion to dismiss the complaint for failure to state a claim upon which relief can be granted, the Committee filed an amended complaint, which added the Indenture Trustee as a plaintiff. [1]

      The Former Directors now bring this Motion so all further discovery, pretrial matters and trial on the Adversary Proceeding can be conducted before this Court.  There is

---

[1]     Copies of the Committee's amended complaint, the Former Directors' Memorandum in Support of their Motion to Dismiss the amended complaint, the Plaintiffs' response to the Motion to Dismiss, and the Former Directors' Reply to Plaintiffs' response are attached as Exhibits "A", "B", "C" and "D", respectively, to the Declaration of Jonathan S. Shenson.

compelling "cause" for this Court to grant the Motion.  The claims against the Former Directors are "non-core" claims predicated upon conduct which historically was actionable in suits at common law, where parties were and are entitled to a trial by jury under the Seventh Amendment to the Constitution.  The Former Directors have not consented (and will not consent) to the jurisdiction of the Bankruptcy Court for purposes of entering final judgments or orders and, as a result, the Bankruptcy Court is constitutionally prohibited from conducting a jury trial on the these claims.  All of the other relevant factors under binding Second Circuit authority favor this Court's permissive withdrawal of the reference.  Indeed, withdrawal of the reference of all claims, including "core" claims against the Blechmans, will avoid duplicative presentations on substantially overlapping factual matters and related legal issues, avoiding unnecessary delays and depletion of the resources of the Court and the assets of the bankruptcy estate.

## II.      STATEMENT OF FACTS

The Committee's Amended Complaint devotes some 20 pages to a purported description of the Debtors' background and the allegedly wrongful conduct of the Former Directors and other defendants.  Accepting the Committee's allegations for purposes of determining the nature of the claims against the Former Directors, the facts relevant to the claims against the Former Directors may be summarized as follows:

The Former Directors are partners in Leonard Green & Partners L.P. ("Leonard Green"), a private equity firm.  Complaint ¶¶ 21, 23, 29.  Leonard Green sponsored the acquisition of TLC from the Blechman brothers' parents in May of 1996 (the "1996 Acquisition").  (*Id*. ¶ 32)  In return for an investment of approximately $42 million, an affiliate of Leonard Green acquired 48 percent of TLC's common stock and additional preferred stock.  (*Id*.) Other financing included a $100 million subordinated note offering and a $53 million revolving credit facility with Chase Manhattan.  (*Id*.)  The Blechman brothers acquired 45% of TLC's

2

common stock and received long term employment contracts.  (*Id.* ¶¶ 39, 40, 47)  Following the 1996 Acquisition, TLC's Board consisted of the five Blechman brothers, together with three nominees of Leonard Green, including the Former Directors.  (*Id.* ¶ 35)

Although the Committee alleges that the 1996 Acquisition "left TLC over-leveraged and in a substantially weakened condition," the Company completed an initial public offering of 8.5 million shares in November of that year.  (*Id.* ¶¶ 33, 45)  Proceeds of the offering were used to redeem preferred stock issued in the Acquisition and to pay off $20 million of the Chase credit facility.  (*Id.* ¶ 45)  Following the public offering, Leonard Green owned 32.9 percent of the Company's common stock, while the Blechmans collectively owned 30.5 percent.[2]  (*Id.* ¶ 47)

In 1997 and 1998, TLC acquired three companies:  (1) a network marketer (Changes International) for $5.8 million in stock and $7.9 million in cash; (2) a direct mail retailer (Bronson) for $56.1 million in cash, (3) a manufacturer of private label vitamins and supplements (Health Factors, which was part of the Bronson acquisition) and (4) a food bar manufacturer (PR Nutrition) for $39.7 million in stock.  (*Id.* ¶¶ 50, 52, 87)  In part to fund these acquisitions, the Company effected a secondary offering on April 4, 1998.  (*Id.* ¶ 52)  In this offering, TLC sold 4.4 million shares for $147.5 million, which was used to fund the Bronson acquisition, to reduce debt by $45 million, and to increase working capital by over $40 million. (*Id.*)  In addition, Leonard Green sold 3.6 million shares, approximately half of its stock position. (*Id.* ¶ 53)

In 1999, the Company began to experience a series of financial reversals.  In August of that year, TLC's largest competitor purchased General Nutrition Centers ("GNC"),

---

[2]      Two months before the initial public offering, the Company completed an exchange offer for $100 million in subordinated notes (the "New Notes"); the New Notes were governed by an indenture (the "Indenture") which limited the Company's ability to encumber its assets and to create liens. (Id. ¶ 32)

one of TLC's largest retail customers, and GNC substantially reduced its purchases from TLC. (*Id*. ¶¶ 57, 69)  The Company experienced a decline in sales and revenues, which caused a default under the Chase credit line. (*Id*. ¶ 62)  The Company negotiated with Chase to restructure the credit facility, but also began negotiations with other lenders to replace the Chase facility. (*Id*.)  As part of this process, one of the Former Directors, John Danhakl, "approached representatives of CIT on behalf of the Company to explore the possibility of replacing the Chase credit line."  (*Id*.)

In November of 2000, the Company was forced to restate its earnings, which caused a dramatic decline in its stock price.  (*Id*. ¶¶ 64-66)  As a result of the restatement and mounting losses, "Chase informed the Company that certain lenders participating in its credit facility would not continue to forebear and that the Company had to find replacement financing." (*Id*. ¶ 68)  By early 2001, CIT had emerged as "the only bank willing to lend to the Company." (*Id.* ¶ 71)

On March 29, 2001, CIT extended a three year $60 million credit line to TLC. At CIT's request, Ross and Dean Blechman guaranteed $15 million of the line with $20 million of their TLC stock; this pledge was replaced by a $15 million letter of credit from Citibank on April 12, 2001.  (*Id* ¶ 73.)  To secure repayment to the Blechmans in the event the letter of credit was drawn, the Blechmans caused the Company to enter into a Reimbursement Agreement and a Pledge of Assets (the "Reimbursement/Pledge Agreement") under which the Company pledged all of its assets, subject to CIT's liens, to secure repayment in the event the letter of credit was drawn.  (*Id* ¶ 74)  The Complaint alleges that the Reimbursement/Pledge Agreement violated the Indenture for the New Notes.  (*Id.* ¶ 67)  According to the Complaint, TLC's "full board never

deliberated upon whether to approve" the Reimbursement/Pledge Agreement, and "the board never approved the [Reimbursement/Pledge Agreement] in accordance with law." (*Id.* ¶ 74)[3]

In 2001 and 2002, the Company continued to experience losses, and consulted with several restructuring consultants. (*Id.* ¶¶ 100-101)  Although bankruptcy was one "option" described by these consultants, the Committee never alleges that <u>any</u> consultant told the Board that bankruptcy was the only prudent course at any point in 2001 or 2002. (*Id.*)[4]

As part of its business plan, the Company embarked on a program to reduce costs and focus on its core business.  The Company sold Changes International and a portion of PR Nutrition in April of 2001 for a total of $4.9 million. (*Id.* ¶ 87)  In June of 2001, the Company sold its publishing division to Steve Blechman for $1 million, and he resigned to run that company. (*Id.* ¶ 91)  Pursuant to his pre-existing employment agreement (which had been renewed in 1999), Steve Blechman received a $900,000 non-compete payment upon his resignation. (*Id.*)  Dean Blechman resigned at year end, and received a $1.35 million non-compete payment. (*Id.* ¶ 97)  In November of 2000, the Company terminated Brian and Neil Blechman; they also received severance and non-compete payments of $1.35 million pursuant to their employment agreements. (*Id..* ¶ 105)

The Company's losses continued to mount and, in January of 2003, it sold Bronson for $8 million.  In April of 2003, the Former Directors were not re-nominated as directors and left the Board. (*Id.* ¶ 114)  Five months later, on September 4, 2003, the Company commenced a proceeding under Chapter 11. (*Id.* ¶ 116)

---

[3]      The Former Directors believe that the amended complaint significantly overstates the extent (if any) to which corporate formalities were not observed in approving the Reimbursement/Pledge Agreement.  For purposes of this motion, however, we will accept the Platintiffs' allegations as true.

[4]      In fact, according to the original complaint, TLC retained Solomon & Company ("Solomon") in April 2002, and Solomon "advised the Company in November of 2002 to continue with its business plan." *See Complaint* ¶ 82.

**III.    THERE IS COMPELLING "CAUSE" FOR THIS COURT TO WITHDRAW THE REFERENCE**

Although federal district courts have original (but not exclusive) jurisdiction over all bankruptcy proceedings, 28 U.S.C. § 1334(b), such proceedings may be referred to the bankruptcy courts pursuant to 28 U.S.C. § 157(a).[5]  However, Congress also provided parties and district courts with a means to withdraw the reference in cases that would not be appropriate for the bankruptcy courts to decide.  *See* 28 U.S.C. § 157(d); Fed. R. Bankr. P. 5011.  Specifically, 28 U.S.C. § 157(d) authorizes the District Court to: "withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."

This first sentence of Section 157(d) is generally referred to as the "permissive withdrawal" provision.  Determining whether there is "cause" for permissive withdrawal involves a two-step inquiry.  "A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core."  *In re Orion Pictures Corp*, 4 F.3d 1095, 1101 (2d Cir. 1993).  If a claim is non-core and a jury demand has been filed, the inability of the bankruptcy court to preside over a jury trial supports withdrawal of the reference. *Id.*, 4 F.3d at 1011 and 1102.  Second, "[o]nce a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors."  *Id.  See also In re Durso Supermarkets, Inc.*, 170 B.R. 211, 213 (S.D.N.Y. 1994).

In this case, the Committee asserts two claims against the Former Directors: breach of fiduciary duty and deepening insolvency.  The Committee acknowledges that these claims are "non-core."  Complaint, ¶ 2.  Each claim seeks only money damages from the Former

---

[5]    In this district, 28  U.S.C. § 157(a) has been implemented by a standing order that provides for the automatic referral of all bankruptcy proceedings to the bankruptcy courts of this district.  *See* Standing Order of Referral of Cases to Bankruptcy Judges, dated July 10, 1984 (Ward, Acting C.J.).

Directors. [6]   Concurrently with the filing of this Motion, the Former Directors have filed a jury trial demand with the Bankruptcy Court.

In these circumstances, several compelling factors favor permissive withdrawal of the reference.  Plaintiffs acknowledge that the claims against the Former Directors are "non-core."  The Former Directors have made a timely demand for a jury trial and, as demonstrated below, the Former Directors are entitled to a jury trial on those claims.  The Bankruptcy Court is prohibited by the Constitution from conducting a jury trial on such claims.  The most efficient use of this Court's resources is for one judge to preside over the entire Adversary Action, and only this Court is empowered to do so.  Moreover, because the Bankruptcy Court cannot enter final orders in any non-core proceeding, this Court will necessarily become involved in the Adversary Action.  Failing to withdraw the reference will result in duplicative litigation, cause needless delays and impose additional costs to the parties.  Ample "cause" exists for this Court to withdraw the reference.

A.    The Claims Against the Former Directors are "Non-Core"

Bankruptcy courts are not authorized under Article III of the Constitution or the Bankruptcy Code to enter final orders with respect to non-core claims. [7]  The presence of non-

---

[6]    Although the Committee seeks an order declaring invalid the Reimbursement/Pledge Agreement entered into by the Company, the Blechmans and the Wives, no equitable relief is requested from the Former Directors.  *See* Amended Complaint ¶ 2

[7]    *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982) (non-Article III bankruptcy courts cannot adjudicate state-created rights which are non-core matters); *Orion*, 4 F.3d at 1101 (While bankruptcy judges may "hear and determine" core proceedings under Title 11, they may not determine, or enter final orders and judgments, in non-core proceedings); *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999) (whether a proceeding is core or non-core determines "both the extent of the Bankruptcy Court's jurisdiction, and the standard by which the District Court reviews its factual findings"); 28 U.S.C. § 157(c)(1) (limiting bankruptcy court's power over non-core matters to submission of proposed findings of fact and conclusions of law, which are subject to *de novo* review by the district court); *compare* § 157(b)(1) (authorizing bankruptcy courts to enter "appropriate orders and judgments" in core proceedings).

core claims here establishes cause to withdraw the reference.  *See Orion*, 4 F.3d at 1101; *In re Prof'l Ins. Mgmt.*, No. Civ. 98-3617, 2000 WL 679247, at *5 (D. N.J. May 25, 2000); *In re NDEP Corp.*, 203 B.R. 905, 907-08 (D. Del. 1996).

In paragraph 2 of the Complaint, the Plaintiffs acknowledge that the claims against the Former Directors are "non-core."  Specifically, the Committee alleges that the Adversary Action is a "core proceeding" with respect to its "equitable subordination, recharacterization and avoidance claims, [but] with respect to the remaining claims, this adversary proceeding is a non-core proceeding but is otherwise 'related to a case under title 11.'"  The claims for breach of fiduciary duty and deepening insolvency are the only claims the Plaintiffs have asserted against the Former Directors, and neither of them includes any claims for equitable subordination, recharacterization or avoidance against the Former Directors.

Plaintiffs' acknowledgement that the claims against the Former Directors are "non-core" is consistent with the overwhelming weight of legal authority.  Section § 157 of Title 28 of the United States Code distinguishes between "core" and "non-core" bankruptcy proceedings, and provides a non-exclusive list of examples of "core" proceedings.  Core proceedings are "generally defined as matters arising under title 11, or arising in a case under title 11 and which would have no existence outside of the bankruptcy case."  *In re J.T. Moran Fin. Corp.*, 124 B.R. 931, 937 (S.D.N.Y. 1991).  These proceedings "must invoke a substantive right provided by title 11."  *Id.*  In contrast, non-core proceedings "consist of those claims arising under traditional state law which must be determined by state law. . . . They are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or state court."  *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, LLP*, 201 B.R. 635, 639 (S.D.N.Y. 1996) (quotation marks omitted).

State law causes of action for breach of fiduciary duty, negligence and fraud do not involve the application of bankruptcy law and are therefore non-core.  *Id.; Matter of*

8

*Delaware & Hudson Ry. Co.*, 122 B.R. 887, 894 (D. Del. 1991) (district court found that the state law claims at issue in a directors & officers lawsuit were non-core where the claims existed before, and independent of, the bankruptcy filing); *In re Lombard Wall, Inc*., 48 B.R. 986 (S.D.N.Y. 1985) (fraud, conversion, misrepresentation); *Durso Supermarkets*, 170 B.R. at 215 (in holding that action is non-core, "action presents no issue of bankruptcy law; rather, it alleges only state law claims of fraud and breach of contract.").  "When the cause of action is itself a creature of state law, as the claims sounding in negligence and breach of fiduciary duty clearly are, the bankruptcy court may not constitutionally enter a judgment over the objection of the non-debtor defendant."  *In re 610 W. 142 Owners Corp.*, 219 B.R. 363, 369 (Bankr. S.D.N.Y. 1998) (*quoting In re Michigan Real Estate Ins. Trust*, 87 B.R. 447, 453 (E.D. Mich. 1988), *citing Northern Pipeline Constr. Co. v. Marathon Pipe Line Co*., 458 U.S. 50, 102 S.Ct. 2858 (1982)).

The claims for breach of fiduciary duty and deepening insolvency are Plaintiffs' only claims against the Former Directors.  Like the breach of fiduciary duty claims in *Matter of Delaware & Hudson*, the fifth claim for relief is a claim under state law for breach of fiduciary duty which arose pre-petition, does not involve application of bankruptcy law and, accordingly, is non-core.  Similarly, the fifteenth claim for relief (deepening insolvency) is non-core.  The claim is based upon alleged pre-petition conduct and a claim for deepening insolvency is a state law cause action.  *See Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340 (3rd Cir. 2001) (The Third Circuit, in interpreting Pennsylvania state law, found there to be a state law cause of action for deepening insolvency); *Exide Technologies, Inc*., 299 B.R. 732, 751 (Bankr. D. 2003) (claim for deepening insolvency is a state law claim).

In short, the Committee does not dispute that the claims against the Former Directors are "non-core."  These claims turn on and require interpretation of traditional state law concerning fiduciary duties of directors, common law fraud and other related issues.  Title 11 does not create an action for breach of fiduciary duty or deepening insolvency.  The claims arise

9

under the Delaware state law, exist independent of the bankruptcy, and could have been brought in an appropriate forum outside of the bankruptcy court.  Accordingly, the claims are "non-core." We demonstrate below that the additional factors relevant to withdrawal of the reference also support issuance of an order granting the requested relief.

> B.      The Former Directors have a Constitutional Right to a Jury Trial on the Non-Core Claims.

The Constitution prohibits bankruptcy courts from holding jury trials in non-core matters without the consent of all parties.  If a case is non-core and a jury demand has been filed, the inability of the bankruptcy court to hold the trial supports withdrawal of the reference.  *In re Orion*, 4 F.3d at 1011.

The Seventh Amendment preserves the right to trial by jury for suits at common law, not in equity.  *Parsons v. Bedford*, 28 U.S. 433, 446 – 447 , 7 L.Ed. 732 (1830).  In determining whether a party has a Seventh Amendment right to a jury trial, this Court must, first, compare the subject "action to 18th Century actions brought in the courts of England prior to the merger of the courts of law and equity.  Second, examine the remedy sought and determine whether it is legal or equitable in nature."  *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 61, 109 S.Ct. 2782, 2800 (1989)) (internal citations omitted).  In holding that defendant is entitled to a jury trial on a fraudulent transfer action brought under section 548 of the Bankruptcy Code, the *Granfinanciera* Court made clear that not even Congress can eliminate a party's Seventh Amendment right to a jury trial by relabeling the cause of action to which it attaches.  *Id.*  This Court must balance these two factors, giving greater weight to the second stage of the analysis -- the nature of the remedy sought.  *Id.*  The right to a jury trial does not depend on the character of the overall action, but instead is determined by the nature of the issue to be tried.  *Ross v. Bernhard*, 396 U.S. 531, 538 (1970).

1.      The Claims against the Former Directors are Predicated upon Tortious
Conduct Actionable in Suits at Law.

To determine whether the Former Directors are entitled to a jury trial on the claims against them, *Granfinanciera* first requires this Court to consider whether the claims for breach of fiduciary duty and deepening insolvency would have been triable at law or in equity in the 18th Century.  Traditionally, actions <u>solely</u> for breach of fiduciary duty were actions in equity.  *In re Evangelist*, 760 F.2d 27, 31 (1st Cir. 1985) (breach of fiduciary duty claim arose from statute).  However, where a claim for breach of fiduciary duty is predicated upon underlying conduct "which is actionable in a direct suit at common law," the jury should decide whether there has been a breach of fiduciary duty.  *Page Mill Asset Management v. Credit Suisse First Boston*, 2001 WL 863552 (S.D.N.Y. 2001) (defendant entitled to jury trial for breach of fiduciary duty claims based upon an alleged breach of an indenture, a legal claim).  As the Court explained in *DePinto v. Provident Sec. Life Insur. Co.*, 323 F.2d 826, 837 (9th Cir. 1963),

> "Having in mind the necessity of scrutinizing, with utmost care, any seeming curtailment of the right to a jury trial, we hold that where a claim of breach of fiduciary duty is predicated upon underlying conduct, such as negligence, which is actionable in a direct suit at common law, the issue of whether there has been such a breach is ... a jury question.");

<u>*Accord*</u>, *Hallady v. Verschoor*, 381 F.2d 100, 109 (8th Cir. 1967) ("Ordinarily, enforcement of administration of trusts and proceedings involving trusts are subjects for equity jurisdiction, but where the basic nature of the claims present only legal issues, it is entirely proper ... to treat the case as one belonging on the law docket.").

The approach taken by the courts in *Page Mill Asset Management*, *DePinto* and *Hallady* is entirely consistent with the notion that "the constitutional right to a jury trial cannot be made to depend upon the choice of words used in the pleadings."  *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477-478 n.4, 82 S. Ct. 894, 897 n.4 (1962).  Actions sounding in tort would have been heard by an English court of law.  *See generally Granfinanciera*, 492 U.S. at 47 – 48, 109

S.C. at 2793-94 (fraud claim for money damages is an action sounding in tort); *Billing v. Ravin, Greenberg & Zackin*, 22 F.3d 1242 (3d. Cir. 1994) ("Actions sounding in tort 'for damages to a person or property' are ... generally considered to be actions at law.").

The claims against the Former Directors for breach of fiduciary duty and deepening insolvency are predicated upon conduct actionable in suits at law; specifically, actions sounding in tort for money damages.  The fifth claim for relief alleges breaches of the duty of care and loyalty.[8]  Claims for breach of the duty of care are predicated upon negligent conduct historically actionable in suits at law.  *Cinerama, Inc. v. Technicolor Inc. ("Technicolor III")*, 663 A.2d 1134 (Del. Ch. 1994), *aff'd on other grounds*, 663 A.2d 1156 (Del. 1995) (Delaware applies a "gross negligence" standard to claims for breach of duty due care).  Similarly, claims for breach of the duty of loyalty are predicated upon tortious conduct actionable in suits at law.  The duty of loyalty  "proscribes a fiduciary from any means of misappropriation of assets entrusted to [the directors'] management and supervision" for a personal profit, gain or some other advantage. *US West, Inc. v. Time Warner Inc.*, 1996 WL 307445 (Del. Ch. 1996).

The fifteenth claim for relief for deepening insolvency is also predicated upon tortious conduct historically actionable in suits at law.  An action for fraud seeking the payment of money damages would have been heard by an English court of law.  As the Court explained in *Granfinanciera*, 492 U.S. at 48, 109 S.C. at 2793,

> "The nature of the relief respondent seeks strongly supports our preliminary finding that the right he invokes should be denominated legal rather than equitable.  Our decisions establish beyond peradventure that '[i]n cases of fraud or mistake, as under any other head of chancery jurisdiction, a court of the United States will not sustain a bill in equity to obtain only a decree for the payment of money by way of damages, when the like amount

---

[8]    The Committee simply cannot assert a claim for a breach of a supposed duty of good faith, because "Delaware law does not recognize an independent duty of good faith." *Roselink Investors, LLC v. Shenkman*, 2004 WL875262 at *8 (S.D.N.Y. May 19, 2004) (internal citations omitted).

can be recovered at law in an action sounding in tort or for money had and received."

Claims underlying the fifteenth claim for relief are common law fraud claims and, therefore, the Former Directors are entitled to a trial by jury. A deepening insolvency claim (assuming such a claim can be asserted under applicable state law) requires a showing of "fraudulent expansion of corporate debt and prolongation of corporate life." *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340 (3d Cir. 2001). All of the cases that have allowed deepening insolvency claims to proceed have involved some sort of fraudulent conduct or conflict of interest. In *In re R.F. Lafferty* for example, the debtors ran a ponzi scheme. In *In re RSL Com.,* the controlling stockholders caused the company to guarantee the debt of affiliated companies controlled by those stockholders. *In re RSL Com Primecall, Inc),* 2003 WL 22989669, at *8 (Bankr. S.D.N.Y., Dec. 11, 2003); *See also*, *In re Ben Franklin Retail Stores, Inc*., 2000 W L 28266 at *12 (N.D. Ill. Jan. 12, 2000) (certain officers "re-dated the due dates of millions of dollars of receivables to make it appear that they were current" to induce creditors to lend money and supply inventory.)

In sum, both the fifth and fifteenth claims for relief are predicated upon tortious conduct historically actionable in suits at law. Accordingly, under the first *Granfinanciera* factor, the Former Directors are entitled to a trial by jury.

> 2.   The Committee seeks only Money Damages against the Former Directors, Entitling the Former Directors to a Jury Trial.

To determinine whether the Former Directors are entitled to a jury trial on the claims against them, *Granfinanciera* next requires this Court to consider (more than anything else) whether the remedy sought by the Committee is legal or equitable in nature. *Granfinanciera*, 492 U.S. at 61, 109 S.Ct. at 2800. Damages are the traditional form of relief granted by the common law courts. *See Curtis v. Loether*, 415 U.S. 189 (1974) (holding that

13

suits for money damages are legal in nature entailing the right to a jury trial).  An action for recovery of a money judgment is unquestionably a legal remedy.  *Dairy Queen*, 369 U.S. at 476.[9]

Plaintiffs' Amended Complaint seeks <u>only</u> an award of damages from the Former Directors on both the fifth and fifteenth claims for relief.  *See* Complaint ¶¶153, 213 and Prayer for Relief (e) and (o).  Because Plaintiffs have requested only a money judgment from the Former Directors and do not seek any form of equitable relief, a complete remedy for the Committee's claims against the Former Directors is available at law.

C.   <u>Withdrawal of the Reference Will Enhance Judicial Economy, Preserve the Resources of the Parties and Avoid Duplicative Litigation</u>

For the foregoing reasons, the Former Directors are entitled to a jury trial on the claims against them before this Court.  However, while a district court

> might find that the inability of the bankruptcy court to hold a trial constitutes cause to withdraw the reference, … a district court might also decide that a case is unlikely to reach trial, that it will require protracted discovery and court oversight before trial, or that the jury demand is without merit and therefore might conclude that the case at that time is best left in the bankruptcy court.

---

[9]   Plaintiffs will likely call this Court's attention to *Periera v. Cogan*, 2002 WL 989460 (S.D.N.Y. 2002) which seemingly extended the *Evangelist* holding (that there is no jury trial right with respect to fiduciary duty claims where there is no underlying conduct actionable in suits at law) to any and all claims for breach of fiduciary duty, even those which are predicated upon conduct historically actionable at law.  In *Periera*, even though the plaintiff characterized the remedy sought as damages, the *Periera* Court also held it  must "look beyond these characterizations to what the claim for relief actually is."  In doing so, it dismissed the defendants' argument that the relief was not restitution (an equitable remedy) even though the directors never personally possessed any of the funds in dispute, incorrectly citing <u>dicta</u> from a Seventh Circuit case, *Reich v. Continental Casualty Co.,* 33 F.3d 754, 756 (7th Cir. 1994). *Periera* at *5.  The *Periera* Court stated that the "trustees in *Reich* did not profit directly from their actions, yet the Honorable Richard Posner noted that had the case gone to trial neither party would have been entitled to a jury trial." *Id.*  However, the *Reich* court was referring not the trustees (who had already settled their case), but rather to the a co-defendant insurance company that did directly profit (and receive ill-gotten gains) from the alleged wrongdoing.  Therefore, *Pereira* is anything but persuasive law insofar as it stands for the proposition that one can seek the equitable remedy of restitution against a party-defendant that never actually directly benefited from the subject actionable conduct.

14

*In re Orion Pictures Corp.*, 4 F.3d at 1101 (disputed issues concerning breach of contract were "non-core").

Where there is a right to jury trial on "non-core" claims, the court must consider whether "judicial efficiency and uniformity will be promoted by allowing the bankruptcy court to manage the proceeding until the case becomes ready for trial." *In re CIS Corporation*, 172 B.R. 748, 761 (S.D.N.Y. 1994) (withdrawal of the reference of the adversary proceeding denied, with leave to renew, where bankruptcy court already had familiarity with the underlying claims between the parties in light of a motion under 365 already before it); *In re Enron Power Marketing, Inc.*, 2003 WL 68036 (S.D.N.Y. 2003) (withdrawal of reference denied on "non-core" claims where party was entitled to jury trial where (i) proceeding was at preliminary stage and might very well be resolved by dispositive motions, (ii) given the nature of the claim and affirmative defenses, there will likely be a large amount of discovery necessitating significant court oversight and (iii) most importantly, there were eleven other matters before the bankruptcy court involving similar issues with which the bankruptcy judge was already familiar).

Unlike *CIS* and *Enron*, the Bankruptcy Court in this case has not become deeply involved with the Plaintiffs' claims against the Former Directors. There have been no substantive hearings on the Adversary Action. The Committee, through its response to the defendants' motions to dismiss, requested that Court adjourn its consideration of the motions to dismiss until counsel for the parties have had an opportunity to agree on a briefing schedule with respect to the amended complaint. Already the parties have demonstrated that discovery will not require much in the way of court oversight. Prior to the commencement of the Adversary Action, the parties had already engaged in substantial informal discovery, with the Debtors and Blechmans producing more than 14 boxes of documents to the Committee. The parties have negotiated case management and briefing schedules without involving the Bankruptcy Court. Unlike *Enron*, this is also not a case where there are other similar proceedings already before the

15

Bankruptcy Court which, in the name of judicial efficiency and uniformity, should remain with the Bankruptcy Court until trial.

In determining whether to withdraw the reference now (as opposed to just prior to trial), courts also consider the most efficient use of judicial resources, the potential for delay and costs to the parties, the need for uniformity of bankruptcy administration, the prevention forum shopping, and other related factors.  *Orion*, 4 F.3d at 1101.

The balance of these *Orion* factors favors withdrawal in this case.  Ultimately, as demonstrated above, this Court must preside over the jury trial.  Leading up to the jury trial, the parties will engage in discovery and pre-trial litigation relating to the claims, but any final orders entered by the Bankruptcy Court will necessarily be subject to *de novo* review by this Court. Even if the Former Directors did not have a Seventh Amendment jury trial right, the Bankruptcy Court would nonetheless be precluded from issuing any final rulings at trial under 28 U.S.C. § 157(c)(1).  Therefore, absent withdrawal of the reference, this Court will be required to conduct a second trial on exactly the same factual and legal issues.  In these circumstances, withdrawing the reference will avoid needless delays and additional expense to the parties. Avoiding the additional hearings that would result if the reference is not withdrawn will allow these disputes to be resolved more expeditiously.  It will also save all parties the expense of those additional hearings.

The Former Directors have not limited the relief sought to simply the claims against them.  Indeed, they seek to have the entire Adversary Action -- including the purported claims against the Blechmans -- "withdrawn in the interests of efficiency when it presents an 'overlapping of facts, transactions, and issues.'"  *In re Wedtech*, 81 B.R. 237, 239 (S.D.N.Y.) (withdrawal of reference where matter with overlapping facts already commenced in the district court).  Withdrawal of the reference for all claims, including "core" claims, will avoid duplicative presentations on substantially overlapping factual matters as well as related legal

16

issues, avoiding unnecessary delays and the depletion of both judicial resources and assets of the bankruptcy estate. *In re Green*, 200 B.R. 296, 299 (S.D.N.Y. 1996) (permissive withdrawal of the reference for entire adversary proceeding including non-core claims of non-moving defendants where moving defendant had a jury trial right on a non-core claim); *1800Postcards, Inc. v. Morel*, 153 F. Supp.2d 359 (committee's "core" fraudulent transfer claim would also be removed in the name of efficiency).

Here, as in *Green* and *1800Postcards*, withdrawal of the reference for the entire Adversary Action, including the "core" proceedings, will eliminate any prospect of duplicative litigation before the Bankruptcy Court and this District Court. All of the parties, including the Committee -- which is using the bankruptcy estate's funds which would otherwise be used to pay creditors -- will also directly benefit from concomitant cost savings. Withdrawal of the reference for non-core matters is intended to accomplish precisely these objectives.

## IV.    CONCLUSION

This Court should withdraw the reference immediately. The Committee concedes that the Claims against the Former Directors are non-core. The predicate conduct upon which these non-core claims are based has historically been subject to suits sounding in tort and actionable at law. The Former Directors have a Seventh Amendment Constitutional right to a jury trial on the Claims, and the Bankruptcy Court is Constitutionally prohibited from conducting this jury trial. Leading up to the jury trial, the parties will encounter many legal issues in which any rulings by the Bankruptcy Court will necessarily be subject to *de novo* review by this Court. Withdrawal of the reference is in the best interests of the Courts in this District and the parties, and withdrawing the reference will also: (1) make the most efficient use of judicial resources by precluding duplicative and wasteful litigation; (2) accelerate, rather than delay, the determination of the parties' rights; and (3) minimize the cost to all parties of litigating the claims. For the foregoing reasons, this Court should withdraw the reference immediately.

LA\1248048.12

Dated:  September 24, 2004

Respectfully submitted,

LATHAM & WATKINS, LLP


By:  /s/ Mark Broude
       Mark Broude (MB 1902)
885 Third Avenue
New York, New York  10022
         and
Marc Rappel (California Bar #97032)
Jonathan Shenson (California Bar #184250)
633 West Fifth Street, Suite 4000
Los Angeles, CA  90071

Attorneys for
Defendants John Danhakl and Jonathan
Sokolof

18